IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,667

STATE OF KANSAS,
*Appellee*,

v.

BRENTON LEE HOBBS,
*Appellant*.

SYLLABUS BY THE COURT

K.S.A. 2011 Supp. 21-5413(b)(1)(A) requires the State to prove that an aggravated battery defendant acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result. On the record in this case, there was sufficient evidence to convict the defendant of aggravated battery because he knowingly caused great bodily harm to another person or disfigurement of another person when he punched the victim.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 5, 2013. Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed January 16, 2015. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jonathon L. Noble*, assistant county attorney, argued the cause, and *Amy L. Aranda*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER J.: Defendant Brenton Lee Hobbs was involved in a fight outside a bar in Emporia after being escorted outside. The fight may have begun and certainly ended when Hobbs punched Scott Nienke, and Nienke fell to the ground, hitting his head on the bumper of a car. Nienke suffered a life-threatening injury but ultimately survived. Hobbs was arrested and later convicted of aggravated battery.

Hobbs appealed his conviction to the Court of Appeals, arguing that there was insufficient evidence to find him guilty of aggravated battery. The panel rejected Hobbs' argument and affirmed his conviction. We accepted Hobbs' petition to review the panel's conclusion that aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(A) requires the State to prove only that the defendant's act that caused great bodily harm or disfigurement was intentional, not that the result of the act was intentional.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of August 11, 2011, Hobbs went to an Emporia bar with several friends and acquaintances to celebrate a birthday. Because he had recently lost his identification, he called ahead to ensure that he could get into the bar. He was informed by the bar's owner that he would be able to enter but would not be served alcohol. When Hobbs arrived, Michael Watson, an employee of the bar, confirmed to Hobbs that he was welcome to enter but could not order or drink alcohol. Watson also warned Hobbs that he would have to leave if anyone saw Hobbs drinking.

Despite the warnings, Watson eventually saw Hobbs drinking alcohol. Watson approached Hobbs and told him that he would have to leave. Watson escorted Hobbs

2

toward the door until he saw Clint Crawford, the bar's bouncer, and asked him to take Hobbs outside. Hobbs and Crawford eventually reached the door of the bar.

Crawford and Elsie Thompson, who had been outside with Nienke, would eventually testify that Hobbs was agitated and did not want to leave. According to both Crawford and Thompson, Nienke attempted to intervene to calm Hobbs. Crawford said that, when Nienke approached Hobbs, Hobbs "tensed up" and looked like "[h]e was expecting . . . a fight, more or less." Both Crawford and Thompson said Hobbs then punched Nienke; Nienke had not touched Hobbs.

After Nienke was hit, "he immediately went stiff" and "fell backwards and hit his head on the bumper of a car and he was hit with enough force that he actually slid under the car." Thompson went to help Nienke, grabbing his head and yelling his name to try to rouse him. She noticed blood coming from his ear and told Crawford to go inside and tell Watson to call 911.

Hobbs would eventually testify to a different version of the events. According to him, "[o]nce I got to the doors, to the threshold, as I was walking out, I got a push from behind." Hobbs testified that he turned around and began arguing with Crawford. Crawford and a couple of others who had gathered outside told Hobbs that he needed to leave. Nienke also told Hobbs that he needed to leave and began walking toward Hobbs.

Hobbs said Nienke continued to walk closer to Hobbs, and Hobbs shifted from arguing with Crawford to arguing with Nienke. As Nienke drew closer, Hobbs eventually had to look up at the much bigger Nienke. Nienke, according to Hobbs, "put his hand around my neck and pushed me" into the back bumper of a parked car. Nienke kept his hand around Hobbs' neck, despite Hobbs telling him that he needed to let go. Finally,

Hobbs punched Nienke. When Nienke fell, Hobbs attempted to leave the bar parking lot, but Watson and another bar patron caught him and held him until police arrived.

Nienke was taken to the hospital, and Hobbs was arrested. The doctor treating Nienke determined that he had suffered a "basilar skull fracture," which would have required a significant impact to be inflicted. At trial, the doctor testified that "[t]his was a very serious injury. This gentleman faced lifetime debility and death."

Hobbs was charged with aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(A), which requires that he "[k]nowingly caus[e] great bodily harm to another person or disfigurement of another person."

The district court judge gave the following jury instruction on the elements of the crime:

"The defendant is charged in count 1 with the crime of aggravated battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.     That the defendant intentionally caused great bodily harm or disfigurement to another person;

"2.     That this occurred on or about the 12th day of the August, 2011, in Lyon County, Kansas.

"Aggravated battery as defined above is a *general intent* crime. The requisite general intent is merely the intent to engage in the underlying conduct which results in great bodily harm. The State is not required to prove that the defendant intended the precise harm or result that occurred." (Emphasis added.)

4

The jury also was instructed:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

The jury found Hobbs guilty of aggravated battery. The district judge sentenced Hobbs to a prison term of 43 months.

On appeal to the Court of Appeals, Hobbs argued that there was insufficient evidence to find him guilty of aggravated battery because, in his view, K.S.A. 2011 Supp. 21-5413(b)(1)(A) required that he "knowingly caused the great bodily harm that was suffered." The panel rejected his argument, relying on the characterization of aggravated battery as a general intent crime. As such, the panel ruled, "only the underlying act that caused great bodily harm or disfigurement must be intentional," and there was "sufficient evidence upon which a jury could find beyond a reasonable doubt that Hobbs intentionally hit Nienke with such force as to cause him great bodily harm." *State v. Hobbs*, No. 107,667, 2013 WL 1457940, at *3 (Kan. App. 2013) (unpublished opinion).

DISCUSSION

The only issue before us on Hobbs' petition for review is whether there was sufficient evidence for his jury to find him guilty of aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(A). But Hobbs' argument is predicated on statutory interpretation.

5

An appellate court's standard of review for a challenge to the sufficiency of the evidence in a criminal case is

"whether, after reviewing all the evidence in a light most favorable to the prosecution, the reviewing court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility." *State v. Lloyd*, 299 Kan. 620, Syl. ¶ 3, 325 P.3d 1122 (2014).

Statutory interpretation and construction, in contrast, raise questions of law reviewable de novo on appeal. *State v. Brown*, 299 Kan. 1021, 1031, 327 P.3d 1002 (2014).

"The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). But if a statute is plain and unambiguous, this court will not speculate about legislative intent or turn to canons of construction or legislative history. *State v. Coman*, 294 Kan. 84, 92, 273 P.3d 701 (2012). On the other hand, where a criminal statute is silent or ambiguous on a matter, the rule of lenity applies to mandate that the statute be construed in favor of the accused. *Cf. State v. Thompson*, 287 Kan. 238, 249, 200 P.3d 22 (2009) (statute silence or ambiguity on unit of prosecution construed in favor of defendant)." *State v. Reese*, 300 Kan. __, 333 P.3d 149, 151 (2014).

Hobbs argues that merely describing aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(A) as a "general intent" crime is incorrect and that the statute's reference to "knowingly" applies to both the defendant's underlying act and its specific resulting harm. Our adoption of Hobbs' view would add to the elements the State traditionally has had to prove to convict a defendant for a general intent crime. See *Gross v. State*, 24 Kan. App. 2d 806, 808, 953 P.2d 689 (1998) (general intent crime requires only that the underlying act be intentional rather than accidental); see also K.S.A. 2011 Supp. 21-

6

5202) (culpable mental state may be established by proof of intentional, knowing, reckless conduct); *State v. Mitchell*, 262 Kan. 434, Syl. ¶ 8, 939 P.2d 879 (1997) (specific intent more than general intent required by K.S.A. 21-3201).

The plain language of the statute alone does not supply a clear response to the issue Hobbs raises. The phrase "knowingly causing great bodily harm to another person or disfigurement of another person" is less than precise. We therefore look beyond the plain language of the statute to determine its meaning. Such statutory construction may require analysis of legislative history, application of canons of construction, and examination of substantive background considerations. See *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013).

K.S.A. 21-3414, the predecessor statute for K.S.A. 2011 Supp. 21-5413, was originally enacted in 1969 and remained unchanged until 1992. As originally enacted, that statute defined aggravated battery as:

> "Aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another and which either:
>
> > "(a) Inflicts great bodily harm upon him; or
> >
> > "(b) Causes any disfigurement or dismemberment to or of his person; or
> >
> > "(c) Is done with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, dismemberment, or death can be inflicted."
> > K.S.A. 21-3414 (Weeks).

Under this version of the statute, this court treated aggravated battery as a specific intent crime. See *State v. Diaz & Altemay*, 232 Kan. 307, 311, 654 P.2d 425 (1982) ("[T]he aggravated battery charged required proof that the accused intentionally applied

7

force to the person of [the victim], with intent to injure him."); *State v. Seely*, 212 Kan. 195, 203, 510 P.2d 115 (1973) ("It may be seen that a 'particular intent,' *i.e.*, an intent to injure, is an essential element of [aggravated battery] in any of its alternative forms."); see also *State v. Synoracki*, 253 Kan. 59, 71, 853 P.2d 24 (1993) ("Under Kansas law, aggravated battery is a specific intent crime." [citing *Diaz & Altemay* and *Seely*]). Intent to injure, not merely to act in such a way that injury resulted, was an express specific element of the crime.

The legislature amended K.S.A. 21-3414 in 1992 but retained the "intent to injure" language. The amendment was scheduled to go into effect on July 1, 1993. See K.S.A. 1993 Supp. 21-3414a(c); L. 1992, ch. 239, sec. 52.

In 1993, before the 1992 amendment could go into effect, the legislature amended K.S.A. 21-3414 again. This time it removed the "intent to injure" language. The pertinent part of the statute then read:

"(a) Aggravated battery is:

(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or

(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

8

(2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or

(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 1993 Supp. 21-3414.

This court never directly addressed whether this version of the statute outlined a general or specific intent crime. The Court of Appeals, however, consistently treated aggravated battery under K.S.A. 21-3414 as a general intent crime. See, *e.g.*, *State v. Esher*, 22 Kan. App. 2d 779, 784, 922 P.2d 1123 (1996) ("The language of 21-3414[a][1][C] simply requires proof that the defendant *intentionally* caused physical contact with another person." ), *overruling on other grounds recognized by In re C.P.W.*, 289 Kan. 448, 213 P.3d 413 (2009).

In 2010, the legislature repealed K.S.A. 21-3414 and enacted a new aggravated battery statute and defined culpable mental states. K.S.A. 2011 Supp. 21-5413(b), applicable to the charged 2011 crime, now states:

"Aggravated battery is:

(1)(A) Knowingly causing great bodily harm to another person or disfigurement of another person;

(B) knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

(C) knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

9

K.S.A. 2011 Supp. 21-5202 now defines the culpable mental states applied under Kansas criminal statutes:

"(a) Except as otherwise provided, a culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'

"(b) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

(1) Intentionally;

(2) knowingly;

(3) recklessly.

. . . .

"(f) If the definition of a crime prescribes a culpable mental state that is sufficient for the commission of a crime, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the crime, unless a contrary purpose plainly appears.

"(g) If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided.

. . . .

10

"(i) A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes."

The Court of Appeals panel framed the issue before it as whether K.S.A. 2011 Supp. 21-5413(b) outlines a general or specific intent crime. *Hobbs*, 2013 WL 1457940, at *3. Because K.S.A. 2011 Supp. 21-5202(i) identifies all crimes with a culpable mental state of "knowingly" as general intent crimes, the panel concluded that "aggravated battery is a general intent crime in which only the underlying act that caused great bodily harm or disfigurement must be intentional." *Hobbs*, 2013 WL 1457940, at *3.

The problem with this straightforward rationale is that it fails to account for the fact that K.S.A. 2011 Supp. 21-5202(f) demands application of the culpable mental state to all material elements of a crime if the statute does not distinguish among the material elements of the crime. The panel's rationale also ignores K.S.A. 2011 Supp. 21-5202(g), which provides that a prescription of a culpable mental state for a particular element means that the mental state is required only for the element specified.

The only *actus reus* prohibited under K.S.A. 2011 Supp. 21-5413(b)(1)(A) is "causing great bodily harm to another person or disfigurement of another person." It matters not how this is achieved. K.S.A. 2011 Supp. 21-5202(i) addresses the application of knowingly to both the nature of a person's conduct and the result of a person's conduct: "[W]ith respect to the nature of such person's conduct" a person acts "'knowingly'" "when such person is aware of the nature of such person's conduct or that the circumstances

11

exist," and "with respect to a result of such person's conduct" a person acts "'knowingly'" "when such person is aware that such person's conduct is reasonably certain to cause the result."

Harmonizing K.S.A. 2011 Supp. 21-5413(b)(1)(A) and K.S.A. 2011 Supp. 21-5202(f), (g), and (i) to the greatest extent possible—see *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701(2012) (court considers provisions of an act *in pari materia* with view to reconciling, bringing provisions into workable harmony); *State v. Frierson*, 298 Kan. 1005, 1012, 319 P.3d 515 (2014) (court assumes legislature does not intend to enact useless, meaningless legislation)—leads us to conclude that the legislature does not intend for "general intent" to necessarily mean what it once did and that "knowingly," as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action.

Because statutes defining crimes equivalent to our battery and aggravated battery statutes vary widely among jurisdictions, only a handful of other states have statutes containing similar language. See, *e.g*., Ill. Comp. Stat. ch. 38 5/12-4(a) (2006) ("he or she knowingly . . . [c]auses great bodily harm or permanent disability or disfigurement"); Neb. Rev. Stat. § 28-308(1) (2008) ("person commits the offense of assault . . . if he or she intentionally or knowingly causes serious bodily injury to another person"). Among those jurisdictions, there does not appear to be a consensus interpretation or construction of the language used.

Appellate courts interpreting the Illinois statute have required more than the underlying act to be intentional. See *People v. Lovelace*, 251 Ill. App. 3d 607, 619, 622

N.E.2d 859 (1993) ("Under the battery and aggravated battery statutes, a defendant charged with knowingly causing great bodily harm or bodily harm must be consciously aware that his conduct is practically certain to cause great bodily harm or bodily harm, *i.e.*, the result of his conduct is in issue."). In contrast, Nebraska has interpreted its statute to outline a general intent crime, as that term has traditionally been understood. See *State v. Williams*, 243 Neb. 959, 963, 503 N.W.2d 561(1993) (offense is general, not specific, intent crime; "that is to say, the intent required . . . relates to the assault, not to the injury which results").

We regard our current overall statutory framework as more similar to that in Illinois than to that in Nebraska. Like Kansas statutes, Illinois statutes define the various culpable mental states, see, *e.g.*, Ill. Comp. St. ch. 38 5/4-5 (2006) (defining "knowledge"), and require: "If the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element." Ill. Comp. St. ch. 38 5/4-3 (2006); *cf.* K.S.A. 2011 Supp. 21-5202(f). Nebraska generally has not statutorily defined the various culpable mental states applied under its criminal statutes. See, *e.g.*, *State v. Bol*, 21 Neb. App. 931, 936, 845 N.W.2d 606 (2014) ("knowingly" not defined by statute).

Having determined what is required to be proved beyond a reasonable doubt under K.S.A. 2011 Supp. 21-5413(b)(1)(A), we turn to whether the evidence was sufficient for a jury to find Hobbs guilty of aggravated battery in this case.

Hobbs' argument that the evidence against him was not sufficient is limited to the assertion that "the State presented no evidence that Mr. Hobbs intended the harm Mr. Nienke suffered." As fully discussed above, the State was not required to prove that Hobbs intended the precise harm that Nienke suffered. It need only prove that Hobbs

13

punched Nienke while knowing that some type of great bodily harm or disfigurement of Nienke was reasonably certain to result from the punch.

When we view the evidence at trial in the light most favorable to the prosecution, as we must, we are convinced that a rational factfinder could have found Hobbs guilty beyond a reasonable doubt. At trial, witnesses testified that Nienke did not initiate contact with Hobbs and that Nienke was simply trying to persuade Hobbs to leave the bar. Crawford testified that, as Nienke approached Hobbs, Hobbs appeared to be preparing for a fight. Witnesses also testified that Nienke "immediately went stiff" after the punch, that is, before hitting his head on the bumper of a car. From this evidence, it would be reasonable for a jury to infer that Hobbs acted while knowing that some type of great bodily harm or disfigurement was reasonably certain to result from the punch, even if he did not anticipate Nienke's precise injury. The evidence against Hobbs was sufficient to uphold his conviction of aggravated battery.

CONCLUSION

K.S.A. 2011 Supp. 21-5413(b)(1)(A) requires proof that an aggravated battery defendant acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result from the defendant's action. In this case, the State presented sufficient evidence to convict defendant Brenton Lee Hobbs of aggravated battery. We therefore affirm the judgment of the district court and the decision of the Court of Appeals.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 107,667 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals under the authority vested in the Supreme Court by K.S.A. 20-2616.