NOT DESIGNATED FOR PUBLICATION

No. 113,401

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee*,

v.

JAMES TULLY COOPER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed September 2, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Joseph M. Penney*, assistant county attorney, *Brett D. Sweeney*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

*Per Curiam*:  James Tully Cooper appeals his conviction in a bench trial of battery against a county correctional officer by challenging the sufficiency of the evidence. Viewing the evidence in the light most favorable to the State, we find sufficient evidence that Cooper acted knowingly and acted in a rude, insulting, or angry manner. Therefore, we affirm.

1

*Procedural and factual background*

Cooper, an inmate in the Butler County Detention Facility, was placed in segregation protective custody where he was confined to his cell 23 hours per day. After 5 months, Cooper wanted out of the segregation unit. After receiving no response to his written requests, Cooper decided to use other means to persuade Sergeant Regina Kearney to return him to the general population section of the jail.

Cooper's means of "prepar[ing] to find a way to talk to [Kearney] and negotiate with her" on January 10, 2014, were extreme. He made small metal knives he thought could be used for bargaining, smeared cream on his face to attract pepper spray away from his eyes, and cut plastic from his mattress to make a hood and leg coverings to block tasers from going through his jumpsuit. He believed that "once they realized that they weren't going to be able to just take [him] down with a taser, . . . they would maybe start negotiating with [him]."

Cooper began his disruption in the dayroom, where officers responded after a sergeant noticed Cooper wearing "a bag" over his head. Kearney spoke with Cooper via intercom and Cooper told her he would surrender his weapons (the small knives he had made) if they reinstated his coffee privileges. Cooper then broke the handle off of a mop or squeegee and beat it against the walls, and Kearney stopped communicating with him.

Cooper then retreated to his cell. There, he took toilet paper, wrote "Eat me" on it, and placed it across the cell door window. He wrote "Pigs" on other toilet paper and covered his outside window with it. He also poured soap and water on the floor outside his cell to slow down and embarrass the officers entering his cell.

Officers' attempts to get Cooper to cooperate were futile. Cooper admitted he "was noncompliant" with the deputy's request to put his hands through the food service door of

2

his cell for handcuffing. Instead, Cooper placed his mattress over the food service door of his cell to block tear gas. Accordingly, the deputies prepared to enter Cooper's cell to take him into custody.

Deputy Guadalupe Briseno entered first, bearing a clear plastic shield in front of him. Cooper, armed with two plastic meal trays he had wrapped in his sheet, jumped up on a table projecting from the wall, swung his trays at Briseno, and struck Briseno's shield or head. Cooper was eventually subdued and charged with battery of a correctional officer.

In a bench trial, the district court heard testimony from the defendant, four Butler county deputies, a sergeant, and a detective, all of whom were at the scene. The court also viewed a surveillance video of the incident. The district court found (1) that Cooper knowingly caused physical contact with Briseno in a rude, insulting, and angry manner by striking a meal tray against his head; (2) that Briseno was a county correctional officer and was engaged in the performance of his duties; and (3) that Cooper was confined in the county jail at the time. The judge therefore found Cooper guilty of battery against a county correctional officer under K.S.A. 2014 Supp. 21-5413(c)(3)(D). Cooper timely appealed.

*Sufficient evidence of battery*

Cooper argues that the State did not prove that he acted knowingly or that he acted in a rude, insulting, or angry manner. When sufficiency of the evidence is challenged in a criminal case, our standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

The district court found that Cooper's conduct met each element of battery, defined as: "knowingly causing physical contact with another person when done in a rude, insulting, or angry manner." K.S.A. 2014 Supp. 21-5413(a)(2). This definition of battery is explicitly included in the definition of the crime of battery upon a correctional officer. See K.S.A. 2014 Supp. 21-5413(c)(3)(D).

*Acted knowingly*

Cooper argues that the State failed to prove that he acted knowingly because conflicting evidence was presented. He argues that conflicting evidence cannot support a conclusion that he could "reasonably be certain that his conduct would result in a tray glancing off of Briseno's head."

Under Kansas law, Cooper need not have foreseen the specific harm that resulted. See *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015). In *Hobbs*, the charge was aggravated battery, which requires "knowingly causing great bodily harm to another person or disfigurement." K.S.A. 2014 Supp. 21-5413(b)(1)(A). Our Supreme Court held that a defendant who acted "while knowing that *any* great bodily harm or disfigurement . . . was reasonably certain to result from the action" met the mental culpability requirement of the statute. (Emphasis added.) 301 Kan. at 211.

The district court heard testimony regarding whether Cooper knowingly caused any physical contact with Briseno. Cooper testified that when he saw Briseno coming into his cell with the shield, he planned to use force against Briseno: "I was just going to use the same amount of force that he was going to use against me." Further, Cooper testified that when Briseno "tried to push me off the table I had no choice but to push or hit the—the sheet full of trays up against his shield." Cooper testified that he hit the bundle of trays against the shield with "[o]ne hard hit" and that "it did probably go over

4

. . . the top [of the shield], because of the force." He testified that, "I pretty much knocked his shield against him and hit him back and he went into Officer Wheatley."

Briseno testified that Cooper slammed the sheet full of trays onto the top of the shield then hit him on the top of the head with one meal tray. Another officer testified that "[t]he sheet and the trays hit Deputy Briseno" and that sometime later, Cooper "dumped the trays out of the sheet onto Deputy Briseno." One officer testified that Cooper swung at Briseno and that it appeared that whatever was in the sheet hit Briseno in the head.

Cooper cites no authority in support of his assertion that the officers' testimony could not support a conviction because it was inconsistent. The district court, as the factfinder in this case, had the ability to resolve conflicting testimony, weigh the evidence, and make credibility determinations. But even if we excluded the officers' testimony, the video and Cooper's admissions that he planned to use force against Briseno and that he swung the sheet-wrapped trays at him provide sufficient evidence for the district court to find that Cooper acted knowingly in causing physical contact with Briseno.

*Acted in a rude, insulting, or angry manner*

We next address Cooper's claim that insufficient evidence shows that he acted in a rude, insulting, or angry manner.

Cooper argues that instead of anger, he acted out of fear. He testified that as the officers approached his cell, some made comments about what they would do and he had "the feeling that they were . . . going to hurt [him]." He testified that after the incident, when he was handcuffed, somebody bent his fingers backward and broke his thumb and

5

one finger. He contends this testimony shows his fear was well-founded, negating a conclusion that he acted in an angry manner.

The relevant statute does not require the State to prove that a defendant was actually angry. *State v. Brooks*, No. 105,358, 2012 WL 309075, at *4 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013). Rather, the statute requires the State to show the defendant knowingly caused the physical contact "in a rude, insulting or angry manner." K.S.A. 2014 Supp. 21-5413(a)(2). Nothing in the plain language of the statute suggests that "rude, insulting or angry manner" is determined based solely on the defendant's subjective perceptions.

Instead, we apply an objective standard that looks to the manner in which the defendant acted, as perceived by a reasonable onlooker. *In re C.T.*, No. 107,841, 2012 WL 5205752, at *4 (Kan. App. 2012) (unpublished opinion). See *Brooks*, 2012 WL 309075 at *4, defining "'angry'" in this context as "'having a menacing or threatening aspect,'" citing Webster's II New Collegiate Dictionary 44 (2001).

Cooper's acts meet the statutory criteria. Officers testified that Cooper was cursing and hollering in the dayroom before he was approached by any of them, and that Cooper broke the handle off of a mop or squeegee and beat it against the wall of the dayroom with so much force that he broke some chunks out of the wall. Briseno testified that when he entered the cell, Cooper jumped up onto the metal table and swung the sheet and trays at him. From this testimony, a rational factfinder could reasonably find that Cooper acted in an "angry manner." We find it unnecessary to address the State's alternative argument that Cooper acted in an insulting manner.

Affirmed.