NOT DESIGNATED FOR PUBLICATION

No. 113,985

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN C. RAMIREZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 16, 2016. Affirmed in part, reversed and vacated in part, and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Juan Ramirez pushed a man down to the ground outside a gas station and took the man's hat. Taking the evidence in the light most favorable to Ramirez, he did nothing more; two other men then hit and kicked the victim while he was on the ground. Ramirez is appealing his conviction for a serious form of aggravated battery—knowingly causing harm to another person in a manner that could inflict great bodily harm. He contends that the jury should have had the option to consider a lesser form of aggravated battery. Specifically, Ramirez argues that while he may have *recklessly* put

the victim on the ground, where he might have been in danger of great bodily harm from the other two men, Ramirez didn't *knowingly* put the victim into that danger.

That argument brings into play a rule that's key to this appeal: When deciding whether to instruct a jury on a lesser offense—giving the jury the option to convict the defendant on that lesser crime—the district court must look at the evidence in the light most favorable to Ramirez. While Ramirez did knowingly put the victim on the ground, it's not clear that Ramirez knew the other two men would then beat the victim while he lay there. In that light, the court should have given the additional jury instruction. Because we cannot say here that there is no reasonable probability that the jury would have ruled differently with the additional instruction, we must set aside the aggravated-battery conviction and send the case back for a new trial on that charge.

Ramirez was also convicted of aggravated robbery, and he asks to set that conviction aside too—on the basis that the district court should have acted on Ramirez' complaints about his court-appointed attorney and given him a new one. But Ramirez had to show justifiable dissatisfaction in the form of some conflict of interests, an irreconcilable disagreement, or a complete breakdown in communication between him and his attorney. The district court properly investigated Ramirez' claims, and we find no abuse of discretion in its decision not to replace Ramirez' attorney before trial.

FACTUAL AND PROCEDURAL BACKGROUND

The victim in our case, Cory Larsen, stopped at a gas station on his way to work. Unfortunately, as it turns out, he was wearing a red Chicago Bulls hat—and the color red is associated with some Wichita gangs. Larsen was not a gang member.

2

When Larsen walked out of the gas station, two men, including Ramirez, approached him. Ramirez and his friends were associated with a gang whose primary color was blue, though Ramirez said he wasn't an active member at the time.

Ramirez and another man approached Larsen. According to Larsen, Ramirez then asked Larsen for the hat. Larsen took off the hat but then turned to run into the gas station. Ramirez and the other man rushed Larsen, pushing him to the ground. At that point, a third man came over, and some or all of the men punched and kicked Larsen while he was on the ground. At some point, they took the Bulls hat and left Larsen on the ground.

Ramirez and the other men then left the gas station together; Larsen's girlfriend took down the license-plate number on their car as they left. An officer tracked it down at a residence a few miles away, where the police found Ramirez and three others—as well as Larsen's hat—in the basement.

Ramirez spoke to the police that day, and his statements are especially important since we must look at the evidence in the light most favorable to him on the jury-instruction issue. Ramirez didn't testify, so what we have are his statements as reported at trial by a police detective, Francois Do, who was called as a witness by the prosecution. Ramirez told Do that Ramirez and another man in his group, Jose, went up to Larsen at the gas station. Jose then asked Larsen, "Are you banging[?]," apparently asking if he was a gang member. At that point, Jose tried to grab for the hat and punched Larsen. Ramirez then pushed Larsen "basically down into the ground." Ramirez said that another person in his group then joined Jose and that the two of them punched and kicked Larsen while he was on the ground. Ramirez admitted pushing Larsen down but not kicking or punching him.

3

Larsen reported that Ramirez and another man (presumably Jose) had punched him and pushed him to the ground. Larsen said that another man then joined them, and all three punched and kicked him while he was on the ground.

The State charged Ramirez with two offenses:

- aggravated robbery—knowingly taking property from Larsen by force while inflicting bodily harm on Larsen; and
- aggravated battery—here, knowingly causing bodily harm to Larsen in a manner that could inflict great body harm, disfigurement, or death.

Ramirez was convicted of both offenses after a 2-day jury trial. The district court sentenced him to prison for 66 months on the aggravated-robbery conviction and for 12 months on the aggravated-battery conviction. The sentences were made concurrent to one another, so the total sentence Ramirez is serving is 66 months in prison, along with 36 months of postrelease supervision afterward.

Two additional procedural developments factor into our appeal. Before trial, Ramirez filed two motions seeking to replace his court-appointed attorney. Both times, the district court asked Ramirez about his concerns but then denied the motion. During trial, Ramirez' attorney asked that the court give the jury the option of considering whether Ramirez had committed a less serious form of aggravated battery. The district court refused to give the jury an instruction about that option, and the jury convicted Ramirez of the more serious form of aggravated battery.

Ramirez has now appealed to our court, raising appellate issues regarding the jury-instruction issue and the district court's refusal to appoint a new attorney for him.

4

I. *The District Court Erred in Refusing the Defendant's Request to Give the Jury the Option to Convict on a Less Serious Form of Aggravated Battery*.

We begin with Ramirez' claim of error in the legal instructions the district court gave the jury. Here, Ramirez was charged with aggravated battery, a crime that has several levels of severity—and punishment—depending on the severity of the conduct involved and on whether the conduct was knowing or reckless. The most serious form of aggravated battery, a severity-level-4 felony, is knowingly causing great bodily harm or disfigurement to another person. The least serious form, a severity-level-8 felony, is recklessly causing bodily harm to another person, either while using a deadly weapon or in a manner that could cause great bodily harm, disfigurement, or death. See K.S.A. 2015 Supp. 21-5413.

The State charged Ramirez with a form of aggravated battery that is a severity-level-7 felony—specifically that he knowingly caused bodily harm to Larsen in a way that could have caused great bodily harm, disfigurement, or death. Ramirez argues that the district court should have allowed the jury to consider the lesser, severity-level-8 version of aggravated battery—that Ramirez committed the aggravated battery only recklessly, not knowingly.

Under Kansas law, a person acts "knowingly" if he or she "is aware of the nature of [the] person's conduct or that the circumstances exist" and "is aware that [his or her] conduct is reasonably certain to cause the result." K.S.A. 2015 Supp. 21-5202(i); see *State v. Hobbs*, 301 Kan. 203, Syl., 340 P.3d 1179 (2015). A person acts "recklessly" when he or she "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross

deviation from the standard of care [that] a reasonable person would exercise in the situation." K.S.A. 2015 Supp. 21-5202(j).

The Kansas Supreme Court has set out a four-step process for considering a defendant's claim of jury-instruction error on appeal:

- First, we consider whether we can review the question at all. *State v. Salary*, 301 Kan. 586, Syl. ¶ 1, 343 P.3d 1165 (2015). Here, there are no questions about our jurisdiction to consider the issue or Ramirez' preservation of the issue for appellate review: His attorney requested the instruction from the district court, and the State makes no challenge to our ability to consider the issue on appeal.

- Second, we must determine whether the instruction was legally appropriate. 301 Kan. 586, Syl. ¶ 1. Recklessly committing the same aggravated battery is a lesser-included offense of the knowing violation. Accordingly, the State makes no suggestion that the instruction Ramirez requested was for any reason legally inappropriate.

- Third, we must determine whether there was sufficient evidence—taking the evidence in the light most favorable to Ramirez—to support giving this instruction to the jury. 301 Kan. 586, Syl. ¶ 1. The parties *are* in dispute about this question.

- Fourth, if we find that the district court erred, we must decide whether the error was harmless. Different standards apply depending on whether the instruction was requested and on whether the error in some way deprived the defendant of a constitutional right. 301 Kan. 586, Syl. ¶ 1. We will discuss and apply these tests as the final step in our analysis.

So we begin our detailed discussion with the evidence. In a criminal jury trial, the jury is tasked with determining what happened based on the evidence. Then, based on the court's instructions about the law, the jury determines the consequences—in a criminal case, whether the State has proved the defendant guilty of the charged offense beyond a reasonable doubt. To make sure that it's the jury, not the judge, that determines what

6

happened, the court must determine whether to give an instruction the defendant asked for based on the evidence viewed in the light most favorable to the defendant. If, viewed in that light, there is evidence that a rational factfinder could agree supports the defense theory, then the court must give the instruction. 301 Kan. 586, Syl. ¶ 2.

As charged, the aggravated battery here consisted of two things: (1) causing bodily harm to Larsen and (2) doing so in a manner that could cause great bodily injury, disfigurement, or death. To convict Ramirez of knowingly committing this offense, he must have *knowingly* done both parts. As our Supreme Court said in *Hobbs*, the State would have to prove that the defendant "acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result." *Hobbs*, 301 Kan. 203, Syl. Only in that circumstance would the defendant have knowingly committed the offense.

So we must determine whether the evidence could have supported not only the State's theory of knowing conduct but also the defendant's theory of recklessness. And here, when we view the evidence in the light most favorable to the defendant, we conclude that the district court should have given the jury the option of finding that Ramirez committed aggravated battery recklessly, not knowingly. Ramirez admitted that he pushed Larsen to the ground. But it's not beyond debate whether Ramirez did so knowing that it was reasonably certain that others would then pummel Larsen while he lay on the ground. If not, then the jury should be allowed to consider whether Ramirez acted knowingly or only recklessly.

We recognize—and the State emphasized in its brief—evidence that would support the jury's verdict of knowing aggravated battery. Some of the witnesses testified that Ramirez struck blows, even after Larsen was on the ground. But the jury wasn't required to accept the testimony of every witness, and Ramirez' statements to police indicated that while he pushed Larsen down, he didn't punch or kick him.

7

There is one more hurdle that Ramirez must overcome to obtain a new trial on this issue—we must still look to see whether the error was a harmless one that didn't impact the jury's verdict. The test for determining harmlessness varies depending on whether a defendant's constitutional rights were at stake. Ramirez argues that's the case here; he says that failing to give a lesser-included-offense instruction deprives a defendant of the constitutional right to present his or her defense. But the State counters that we should apply the test for *non*constitutional error because the right to have jury instructions on lesser-included offenses is provided by a statute, K.S.A. 2015 Supp. 22-3414(3), not the federal or state constitution.

The Kansas Supreme Court has adopted the State's position. In the *Salary* case, as here, the defendant had requested a lesser-included-offense instruction that was denied by the district court; in *Salary*, it was a lesser-included-offense instruction to a murder charge. The *Salary* court found the requested instruction legally appropriate and assumed for the purpose of its decision that it was factually appropriate too. So the issue had to be resolved on whether the assumed error in refusing the instruction was harmless. The court then accepted the State's position that since the right to a jury instruction on a lesser-included offense is a statutory one, the nonconstitutional harmless-error test applies. 301 Kan. at 598-99.

Under that test, we can find the error harmless only if we are persuaded that there is no reasonable probability that the error affected the trial's outcome. 301 Kan. at 599. We are not able to do so here. The events occurred quickly, and eyewitness testimony is not always accurate. Although a jury certainly could still have convicted Ramirez of knowing aggravated battery even if it had the option of reckless aggravated battery, there is a reasonable probability it would not have.

In any criminal case, the State has the burden to prove the defendant guilty beyond a reasonable doubt. When a lesser offense is supported by the evidence and the jury was not allowed to consider it, it is difficult to determine whether the State met its burden on the charge for which the jury convicted the defendant. The evidence here was not so clear-cut that the jury could only have reached one conclusion. Accordingly, we must set aside the conviction for aggravated battery and send the case back for a new trial on that charge.

II. *The District Court Did Not Err When It Declined to Replace Ramirez' Court-Appointed Attorney.*

Ramirez separately asks that his convictions be set aside because the district court refused his requests before trial to appoint a new attorney to represent him. Ramirez was unable to afford an attorney, so the court had appointed one to represent him.

Ramirez filed his first motion for new counsel about 5 months after his arrest. At a hearing, he said he didn't feel that the attorney was representing his interests, and he expressed dissatisfaction with the attorney's failure to get him released on bond pending trial. He also said that he was dissatisfied with a plea offer that his attorney had brought him from the prosecution; Ramirez felt he should get probation, but the plea deal offered only a shorter prison sentence. And Ramirez said that he felt the attorney was trying to force him to take the plea deal rather than go to trial.

His attorney, James Crawford, responded that he had been unable to get Ramirez released before trial due to a federal immigration hold. He said he couldn't force the State to make a better plea offer, and he said that he was willing and nearly prepared to defend Ramirez at trial if Ramirez chose to go that route.

The district court said it wasn't persuaded that there was an irreconcilable conflict or a complete breakdown in communications between Ramirez and Crawford. Still, the

9

court said that it wasn't "necessarily closing the door absolutely" on reconsidering the matter later.

About 2 months later, Ramirez filed another motion for a new attorney. This time, Ramirez alleged that Crawford was racist and thought Ramirez was guilty because of his immigration status. At a hearing, Ramirez said, "I don't really like the dude, to be honest with you."

Crawford said he hadn't formed a personal belief about Ramirez' guilt but that he had discussed the evidence with Ramirez several times, including how it was likely to be viewed at trial. Crawford said he wasn't racist, citing his own African-American heritage and courtroom work, and again said that he couldn't get Ramirez released before trial due to an immigration hold.

Ramirez denied there was a hold, but the district court checked and determined that there was. Ramirez then said, "Well, if I would have understood I had a hold, I wouldn't be asking him to do all these things."

The court again denied Ramirez' motion, concluding that he had not shown "justified dissatisfaction" with Crawford. The court said, "There is no basis here other than Mr. Ramirez doesn't want to work with Mr. Crawford."

With that background in mind, we turn to the standards that guide our review. While a criminal defendant's right to have effective representation includes being given a court-appointed attorney if the defendant cannot afford one, he or she does not have a right to choose the specific attorney who will be appointed. Accordingly, a defendant must show "justifiable dissatisfaction" with the appointed attorney to get a new one; justifiable dissatisfaction may be shown through a conflict of interest between attorney and client, an irreconcilable disagreement, or a complete breakdown in communication.

10

*State v. Staten*, 304 Kan. ___, ___ P.3d ___, 2016 WL 4258150, at *8 (2016); *State v. Brown*, 300 Kan. 565, Syl. ¶¶ 2-3, 331 P.3d 797 (2014). We review the district court's denial of a motion for new counsel for abuse of discretion. Accordingly, unless the district court made a factual or legal error, we reverse its decision only if no reasonable person would agree with it. *State v. Pfannenstiel*, 302 Kan. 747, 760-62, 357 P.3d 877 (2015); *State v. Smith*, 291 Kan. 751, 755, 247 P.3d 676 (2011).

Here, Ramirez did not show justifiable dissatisfaction. While he didn't "like" his attorney, his complaints did not show any conflict of interest, irreconcilable disagreement, or complete breakdown in communication. When we look for justifiable dissatisfaction, we focus on whether the attorney is providing appropriate representation in the adversarial process, not the relationship between the defendant and the attorney. *Pfannensteil*, 302 Kan. at 761-62 (quoting *United States v. Baisden*, 713 F.3d 450, 454 [8th Cir. 2013]). While Ramirez was understandably disappointed that he wasn't offered a better plea deal, that's a choice made by the prosecutor, not defense counsel. Ramirez didn't point to any specific trial preparation that Crawford had failed to do. And Ramirez' complaint about not getting out on bond pending trial wasn't well-founded; the district court confirmed the immigration hold that prevented his release. A reasonable person could agree with the district court that it was appropriate to keep Crawford on the case rather than starting over with a new attorney. Accordingly, the district court properly denied Ramirez' motions for a new attorney.

We reverse Ramirez' conviction for aggravated battery, vacate that part of the sentence, and remand for further proceedings consistent with this opinion on that charge. The district court's judgment is otherwise affirmed.