NOT DESIGNATED FOR PUBLICATION

No. 120,832

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEONARD D. CHARLES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed April 17, 2020. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MALONE and GARDNER, JJ.


PER CURIAM: Leonard D. Charles appeals his conviction of aggravated battery. He contends the district court committed clear error in instructing the jury and reversible error by not polling the jury. Finding no reversible error, we affirm.

*Factual and Procedural Background*

Charles—an inmate at the Sedgwick County Detention Facility—participated in a fight with another inmate—Manuel Trotter. These men were in a common area of their maximum-security pod when the fight broke out. As a result of the fight, Trotter sustained significant injuries, including contusions and lacerations to his head and face. Trotter required four staples in his scalp to close one of the injuries. The State charged Charles with one count of aggravated battery.

At the jury trial, the State presented testimony from several officers. Corporal Nicholas A. Scholander was the first officer to notice the fight. He saw Charles punching Trotter and immediately notified other officers. Deputy Ronald Flack, the officer nearest the incident, waited for back-up to respond to the situation. Before officers entered the pod, the attack ended. Deputy Alexander Bergkamp took Charles to the prison's clinic. Along the way, Charles told Bergkamp that he had been peer pressured into fighting Trotter but that he did not regret it and "would do it again." Charles did not appear to be injured.

The State also admitted a video showing the fight and the events leading up to it from different vantage points. It showed Charles take a broom from a cart and disassemble it from its handle. He then took the broom handle and walked to one end of the room, passing other inmates gathered in the common room. Shortly after, Charles returned through the common room, still carrying the broom handle, and approached Trotter, who was reaching up to change the channel on the television. Charles elbowed Trotter's arm away from the television and the two men began shoving each other. Charles soon hit the back of Trotter's head with the broom handle, causing the handle to break. Charles then dropped the remaining piece of handle from his hand and proceeded to beat Trotter with his fists, knees, and elbows. The two ended up on the floor where

Charles used his shirt, which had been removed, to strangle Trotter. Charles eventually let Trotter up, and officers handcuffed and took both of them out.

Charles testified on his own behalf. We summarize his testimony, much of which contradicts the video. Charles got the broom handle and fought with Trotter. But Trotter sat in front of him and antagonized him, initiating the fight. Three other inmates who were not in the room threatened him with bodily harm over several days. They were in the common area at the time, which prompted him to get the broom handle. Trotter spoke to those three men before Charles attacked Trotter. They were hiding in the shower right behind the television during the fight. They would hurt Charles if he did not fight Trotter. When Charles approached Trotter by the television, his only intent was to change the channel back to the news. But when Trotter smacked him on the hand and shoved him toward the shower, he had to fight back to keep himself safe.

On cross-examination, Charles denied hitting Trotter with the broom handle and denied wrapping his shirt around Trotter's neck.

The jury found Charles guilty of aggravated battery. Charles moved for a judgment of acquittal and a new trial, but the district court denied his motion. Before sentencing, Charles filed a motion for a departure sentence. The district court denied that motion and sentenced Charles to 32 months' prison, to run consecutive to all prior sentences.

Charles timely appeals.

*Did the jury instruction err in defining "knowingly"?*

Charles was charged with aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B). That statute defines the crime as "knowingly causing bodily harm to

3

another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

Charles first argues that the district court erred in defining the term "knowingly" in the jury instruction for aggravated battery. The State responds that Charles invited any error.

*We decline to apply the invited error doctrine.*

Under the invited error doctrine, a defendant cannot challenge an instruction on appeal, even as clearly erroneous under K.S.A. 2019 Supp. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012).

In his proposed instructions, Charles requested the same instruction for the definition of "knowingly" that the State requested and that the district court gave to the jury. This would seem to be invited error. See *State v. Brown*, 306 Kan. 1145, 1165-66, 401 P.3d 611 (2017) (finding invited error because defendant proposed the exact intent instruction that the court ultimately gave to the jury and did not object to it). Both parties requested the following language: "The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the circumstances in which he was acting." Yet on appeal, Charles argues that the district court should have defined "knowingly" to mean "the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result."

But there is some confusion on this matter. At the instruction conference, the district court stated that each party had requested "a different portion of the culpable mental state." Yet we find no difference in the proposed instructions included in the record on appeal and we find no further explanation of the "different portion." At any

4

rate, during the instruction conference, defense counsel agreed to the State's proposed instruction, stating: "The language between what was requested by the State and what was requested by me is similar enough that I don't think it's going to cause a problem one way or the other. So I don't object to the State's requested instruction. I'll withdraw my instruction on that." Because the record is unclear as to what Charles proposed and what he withdrew, we decline to apply the invited error doctrine and instead review the record for clear error. See *State v. Sasser*, 305 Kan. 1231 at 1235, 391 P.3d 698 (2018) (In deciding whether to apply this doctrine, we carefully review "the defendant's actions in causing the alleged error and the context in which those actions occurred. There is no bright-line rule for its application.").

*We apply the clearly erroneous standard.*

Charles concedes that he failed to object to the district court's alleged failure to properly instruct the jury. Thus, we apply the clearly erroneous standard in reviewing the merits of his claim. See K.S.A. 2019 Supp. 22-3414(3*); State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). Under this standard, we will reverse the district court only if an instruction error occurred and we are firmly convinced that the jury would have reached a different verdict had the error not occurred. Charles, as the party claiming clear error, has the burden to demonstrate the necessary prejudice. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

We thus ask whether the instruction was legally and factually appropriate. *McLinn*, 307 Kan. at 318. We use unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016).

In *State v. Hobbs*, 301 Kan. 203, 210, 340 P.3d 1179 (2015), our Supreme Court found that the State is required to prove that a defendant charged with aggravated battery acted knowingly with regard to all of the material elements of the crime. And as it relates

5

to both the act of aggravated battery and the harm caused, "knowingly" as used in K.S.A. 2016 Supp. 21-5413, "means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." 301 Kan. at 211.

But the district court instructed the jury that a "defendant acts knowingly when the defendant is aware of the circumstances in which he was acting." This instruction was incorrect because it did not instruct the jury that Charles must have been aware that his conduct was reasonably certain to cause the result. See *Hobbs*, 301 Kan. 211; *State v. Horne*, No. 111,945, 2015 WL 6832956, at *3 (Kan. App. 2015) (unpublished opinion). An instructional error occurred.

However, we are not convinced that this error changed the outcome of the trial. We will reverse the district court only if an instruction error occurred *and* we are firmly convinced that the jury would have reached a different verdict had the error not occurred. See *McLinn*, 307 Kan. 318.

The State produced overwhelming evidence that Charles did in-fact knowingly cause great bodily harm—he acted when he was aware that his conduct was reasonably certain to cause the result. The jury saw a video in which Charles took a broom handle and hit Trotter with it with such force that the handle broke. He then beat Trotter's head, face, chest, and back. Charles also appears to have strangled Trotter with his shirt. The video shows a pool and other spatters of blood on the floor from Trotter's injuries. Officers were forced to act quickly to subdue Charles and treat Trotter for his injuries. Charles testified that his "intentions were never to harm Mr. Trotter. It was self-defense. [His] main focus [was] the three individuals" that he allegedly previously feared. However, the video of the fight never showed these three individuals enter Charles' pod.

6

The video also lacked evidence that Trotter approached Charles or somehow antagonized the attack. And Charles' testimony does not evidence something other than knowing behavior.

Because we are not convinced that the jury would have reached a different verdict had the instructional error not occurred, the instructional error is harmless.

*Did the district court err in the way it accepted the verdict?*

Next, Charles argues that the district court failed to follow the procedure in K.S.A. 22-3421 for accepting a verdict. He alleges the court failed to ask the jury if the verdict was theirs and failed to ask whether the parties wished to poll the jury.

*Preservation*

The State first contends that Charles has not preserved this issue. Our Supreme Court has held that a party must raise this kind of claim to the district court either by objecting at trial or through a posttrial motion. See *State v. Cheffen*, 297 Kan. 689, 698, 303 P.3d 1261 (2013). Charles has done neither.

Charles admits that he is raising this claim for the first time on appeal. But he argues that we should reach the merits of his claim anyway because it involves only a question of law which is determinative, and because review is required to prevent the denial of a fundamental right. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The Kansas Supreme Court in *Cheffen* considered these same two exceptions to the general preservation rule and rejected them:

> "Cheffen instead claims we should consider his jury polling challenge for the first time
> on appeal because it involves a fundamental right to a unanimous jury verdict. This

7

exception, however, is inapplicable. The right to a unanimous jury verdict is not constitutional—it is statutory. See K.S.A. 22-3423(1)(d); *Holt,* 285 Kan. at 766, 175 P.3d 239; *State v. Voyles,* 284 Kan. 239, 25051, 160 P.3d 794 (2007). Similarly, the right to request a jury poll of individual jurors is not constitutional. *Holt,* 285 Kan. at 767; see K.S.A. 22-3421.

. . . .

"Similarly, we reject an exception to the rule that an issue may not be considered for the first time on appeal on the basis that a challenge such as this presents only questions of law and does not rely on disputed facts. At the very least, the prejudice analysis requires factual review.

"We hold that the better rule is to require a party wishing to challenge the trial court's compliance with the procedures set out in K.S.A. 22-3421 for inquiring about a jury's verdict to have raised that issue first with the district court either in the form of a contemporaneous objection or posttrial motion.

. . . .

"Because no objection was raised below and no posttrial motion was filed, we hold that Cheffen failed to preserve his K.S.A. 22-3421 challenge for appellate court consideration." *State v. Cheffen*, 297 Kan. 689, 697-98, 303 P.3d 1261 (2013).

Charles also tries to factually distinguish his case from *Cheffen*, but we are unpersuaded. Based on the resolution of this issue in *Cheffen*, we find Charles has not preserved his claim that the district court failed to follow K.S.A. 22-3421. We thus find no reversible error.

Affirmed.