NOT DESIGNATED FOR PUBLICATION

No. 115,033

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANCE A. PARKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Stevens District Court; CLINT B. PETERSON, judge. Opinion filed December 8, 2017. Affirmed.

*Ian M. Clark* and *Kurt P. Kerns*, of Ariagno, Kerns, Mank & White, LLC, of Wichita, for appellant.

*Damon J. Simmons*, assistant county attorney, *Paul F. Kitzke*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

PER CURIAM: Lance A. Parker appeals his jury trial conviction of aggravated battery against a law enforcement officer (LEO). On appeal, Parker argues that his conviction should be reversed because it is supported by insufficient evidence. He also argues that his conviction should be reversed because the trial court erred when instructing the jury. The issues are as follows: (1) whether the trial court erred when it defined "knowingly" as the culpable mental state of his crime and (2) whether the trial court erred when it denied his requests to instruct the jury on battery against a LEO and

1

simple battery as lesser included offenses of aggravated battery against a LEO. Nevertheless, for the reasons set forth below, we reject Parker's arguments. Accordingly, we affirm Parker's conviction of aggravated battery against a LEO.

On September 4, 2014, the State charged Parker with possession of methamphetamine with the intent to distribute, possession of drug paraphernalia, and two counts of battery against a LEO. Both battery against a LEO charges stemmed from alleged physical contact Parker caused with two Hugoton, Kansas, police officers—Chief of Police Courtney Leslie and Officer Perry Crane—while they attempted to execute a warrant to search Parker's home the morning of June 3, 2014. Before Parker's trial, the State amended its charges. The State dropped both drug-related charges and amended the battery of Officer Crane to an aggravated battery against a LEO. The State also added the charge of interference with law enforcement.

During Parker's jury trial, Chief Leslie testified that near 5 a.m. on June 3, 2014, she and some of her officers went to Parker's house to execute a search warrant on his house. Officer Crane and another officer went to the front of Parker's house in an attempt to serve the warrant while she was at the back of Parker's house. She explained that she noticed that a light came on towards the back of Parker's house. According to Chief Leslie, she then radioed Officer Crane to come to the backside of the house; she testified that as she did this, Parker came out of the house through the backdoor. Chief Leslie estimated that Parker came 10 to 15 feet outside of his backdoor. She testified that Parker immediately saw her and asked her, "Hey, Courtney, what's going on?"

Chief Leslie explained that she told Parker she had a search warrant for his house and that she would show him a copy. She explained that as she told Parker this, Officer Crane entered into the backyard. She testified that Parker then turned around and started heading towards his backdoor. Chief Leslie testified that she told Parker not to go back into his house at least a couple of times, but he did not stop. Chief Leslie further testified

2

that she followed Parker to his backdoor, but when she got to his backdoor, Parker was partially inside of the door. Chief Leslie explained that because the door was not fully closed, she was able to slip her fingers in the crack to prevent Parker from fully closing his backdoor. A struggle over the door then ensued. She testified that during that struggle, she attempted to push the door open, and Parker attempted to push the door shut on top of her fingers. She testified that her fingers were cut and bruised because Parker attempted to shut the door on top of her fingers. She further testified that the struggle lasted 30 to 45 seconds.

Officer Crane testified that on the morning of June 3, 2014, he and another officer knocked on Parker's front door to serve a warrant. He testified that after knocking on the door several times, Chief Leslie called him on the police radio. She stated that Parker had come out of his backdoor. He explained that he and the other officer then went to the backyard. He further explained that when he reached the backyard, Chief Leslie was telling Parker about the search warrant. He stated that Parker turned around and started walking back towards his house. He further testified that Chief Leslie told Parker not to go back into the house but Parker did anyway, which brought about the struggle with the backdoor. He testified that once he saw Chief Leslie pushing on the door and heard her say her finger was stuck in the door, he went to help Chief Leslie by pushing on the door. He described the struggle with the backdoor as follows: "[The door] seesawed back and forth . . . opening and closing about an inch gap to an eight to 12 inches [gap]." He testified that as he pushed on the door, he instructed Parker to "stop and open up the door." Officer Crane testified that Parker ignored this instruction.

Officer Crane also explained that during the struggle, he used his right leg as leverage to get the door open. He testified that at one point he had used his right leg to get the door "open fairly wide" when "there was a lunge at the door that drove [him] back and caused [his right] knee to buckle." Officer Crane explained that when his knee buckled, he "felt a very hard pop" and heard an audible noise that "sounded like a

3

shotgun going off." He explained that he instantly collapsed to the ground. He testified that following these events, he saw a doctor who diagnosed his injury as a torn ACL and meniscus. He testified that as a result of those injuries, he suffered pain, swelling, and instability in his right knee. He further testified that to repair his torn ACL and meniscus, he had to undergo surgery and rehabilitation. He explained that because of the surgery and rehab, he was unable to work for five months. He further explained that because his mobility was still impaired, he had to wear a corrective brace, and he had permanent scarring. The doctor who treated Officer Crane for his torn ACL and meniscus confirmed Officer Crane's account of the symptoms he suffered as a result of the initial injury and the surgery.

Parker testified that around 5 a.m. on June 3, 2014, his wife woke him up after hearing a loud noise that she did not recognize. He testified that he went out the backdoor of his house and saw Chief Leslie, who he admitted was wearing her uniform. He testified that he asked her what was going on, and she told him that she had a search warrant, but he was not exactly sure what she had said. According to Parker, it was then that he realized he was only wearing his shorts, so he decided to go back inside his house. He testified that he could not recall if Chief Leslie told him not to go inside his house, but he was positive that he never saw Officer Crane. When asked whether "they," i.e., the police, were trying to open his backdoor, Parker testified: "They were trying to keep the door open, I was trying to shut it." He further testified that he did not knowingly hurt either Chief Leslie or Officer Crane.

During the jury instruction conference, Parker argued that the jury should be instructed on both battery against a LEO and simple battery as lesser included offenses of aggravated battery against Officer Crane. The trial court disagreed, finding that the evidence supported only a great bodily harm instruction. Parker lodged no other objections to the jury instructions.

4

The jury ultimately found Parker guilty on all counts. The trial court sentenced Parker to a controlling sentence of 79 months' imprisonment followed by 36 months' postrelease supervision.

Parker timely appealed.

*Was There Sufficient Evidence to Support Parker's Aggravated Battery Against a Law Enforcement Officer Conviction?*

Parker argues that there was insufficient evidence to support his aggravated battery against a LEO conviction. Parker contends that insufficient evidence supported his conviction because nothing proved that he "acted while knowing that a simple struggle over the opening and closing of a door was reasonably certain to result in any great bodily harm or disfigurement to anyone, especially [O]fficer Crane." In support of his argument, he cites to *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015).

*Applicable Law*

This court reviews sufficiency of the evidence challenges by examining the evidence in the light most favorable to the State to determine if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). While engaging in this analysis, we are not to reweigh the evidence or to reassess the trial court's credibility determinations of the witnesses. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Parker was charged with aggravated battery against a LEO under K.S.A. 2016 Supp. 21-5413(d)(1)(A), under a theory that he caused great bodily harm to Officer Crane. For sufficient evidence to support Parker's conviction of aggravated battery

5

against a LEO conviction, the following elements must be shown: (1) Parker must have "knowingly caused great bodily harm to [Officer Crane]," (2) Officer Crane must have been in "uniform[] or properly identified [as a] city [LEO]," (3) Officer Crane must have been "engaged in the performance of his duty," and (4) this act must have occurred "on or about the 3rd day of June, 2014, in Steven[s] County, Kansas." See K.S.A. 2016 Supp. 21-5413(d)(1)(A).

*Sufficient Evidence Supported Parker's Conviction*

Parker has not challenged that there was evidence presented establishing the second, third, and fourth elements of his crime. Consequently, this court can assume there was sufficient evidence supporting the second, third, and fourth elements of Parker's crime because Parker has not brought into question the sufficiency of those elements.

Regarding the first element of his alleged crime of aggravated battery against a LEO, the entirety of Parker's argument on appeal is that insufficient evidence existed to support his conviction of aggravated battery against a LEO because he did not *knowingly* cause great bodily harm to Officer Crane. He contends that the evidence supports that he did not even know that Officer Crane was involved in the struggle because this was what he testified to at trial. Although not clearly stated, Parker seems to contend that if he was unaware of Officer Crane's presence, he could not have knowingly committed the aggravated battery against him. Parker further points out that he did not say anything to Officer Crane or ever strike out at him. Parker asserts our Supreme Court's holding in *Hobbs* supports his argument that there was insufficient evidence to support that he was aware his actions could have caused great bodily harm.

The underlying facts of the *Hobbs* case are as follows: Brenton Hobbs punched Scott Nienke, who then fell backwards and hit his head on the bumper of a car. Although Nienke survived, he could have died and faced potential lifetime debility. Following a

6

jury trial, Hobbs was convicted of aggravated battery. Before our Supreme Court, Hobbs complained that there was insufficient evidence to support his aggravated battery conviction. He argued that insufficient evidence existed that he knowingly committed the crime. Our Supreme Court disagreed.

In doing so, our Supreme Court first held:

"[T]he legislature does not intend for 'general intent' to necessarily mean what it once did and that 'knowingly,' as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that *any great bodily harm or disfigurement of the victim was reasonably certain to result from the action*." (Emphasis added.) *Hobbs*, 301 Kan. at 211.

Next, our Supreme Court rejected Hobbs' argument that he did not knowingly commit the aggravated battery. It explained: "[T]he State was not required to prove that Hobbs intended the precise harm that Nienke suffered. It need only prove that Hobbs punched Nienke while knowing that some type of great bodily harm or disfigurement of Nienke was reasonably certain to result from the punch." 301 Kan. at 212. It then concluded that given the facts of Hobbs' case, sufficient evidence supported Hobbs' aggravated battery conviction. 301 Kan. at 212. Two key facts the *Hobbs* court relied on in its holding were the fact that witnesses had testified that Hobbs was "preparing for a fight" and that Nienke "immediately went stiff" on being punched. 303 Kan. at 212.

Parker asserts that the *Hobbs* holding supports his position that insufficient evidence existed concerning his aggravated battery conviction against a LEO. He maintains that it was impossible for him to have been reasonably certain that the struggle with his backdoor would have caused great bodily harm to Officer Crane. Nevertheless, as stressed by the State, Parker's reliance on our Supreme Court's holding in *Hobbs* is

7

misplaced. First, Parker's reliance on *Hobbs* works only under his limited account of the facts. He points out that he never testified that he knew Officer Crane was present, or that he intended to harm Officer Crane, or that he struck Officer Crane. Yet, this court must consider the evidence in the light most favorable to the State. For example, Officer Crane testified that he came around to Parker's backyard before Parker had retreated into the house. Officer Crane also testified that he told Parker to "stop and open up the door" during the struggle.

Although Parker might not have known Officer Crane by name, at trial, he testified that "*they* were trying to keep the door open, [while he] was trying to shut it." (Emphasis added.) Parker's word choice indicates he knew Chief Leslie had help while trying to open his backdoor. Consequently, in the light most favorable to the State, this evidence supports that Parker was fully aware of Officer Crane's presence.

Once Parker's awareness of Officer Crane is established, it is readily apparent that his argument that insufficient evidence supports that he knowingly caused great bodily harm to Officer Crane fails. The State argues in its brief that "[i]f a single punch [in *Hobbs*] constitutes knowingly engaging in activities reasonably certain to result in great bodily harm, then repeatedly slamming a door into an officer must be reasonably certain to result in great bodily harm." Parker counters that there was no way he could have known that Officer Crane's knee would be injured because of the struggle over his backdoor. Of these two arguments, the State's argument is more reasonable than Parker's.

In the light most favorable to the State, the facts before this court are as follows: To hinder the execution of a search warrant, Parker ran back into his house. This resulted in a 30- to 45-second struggle with his backdoor. Moreover, the fact that Parker ran back into the house and began engaging in a struggle over the door is analogous to the situation where witnesses in *Hobbs* had described Hobbs as "preparing for a fight." Parker's actions in running back to the house shows that he was not going to allow the

8

police to enter his house to serve the search warrant without first resisting their efforts to do so. During that struggle over the door, the backdoor would open back and forth, "seesawing" from "an inch gap to an eight to 12 inches [gap]." Parker was fully aware of the police presence, and knew "they were trying to keep the door open, [while he] was trying to shut it." He knew that Officer Crane was present at the door because he saw him in the backyard and because Officer Crane told Parker to stop trying to shut the door. He also knew that Chief Leslie was present. Moreover, the evidence supports that Chief Leslie's fingers were in the door. Nevertheless, in an attempt to close the door, Parker would "lunge" at the door.

When people "lunge" at something or someone, they generally do so with the entire force of their body. A lunge becomes even more powerful (1) when it is aimed at a person who is off balance and (2) when it comes as a surprise. Officer Crane testified that the backdoor was moving back and forth and "opened fairly wide" when Parker made his lunge that caused the injury. Thus, Parker lunged when Officer Crane was vulnerable, as he was off balance, having all of his strength pushed against a door. This, in turn, would cause the lunge to have a very powerful effect. The barrier the door created clearly provided Parker the opportunity of a surprise shove of the door. Officer Crane would have had no time to brace himself for Parker's lunge, and this is something that Parker would have known. The fact that it took multiple police officers to open Parker's door is evidence of the force Parker was using in an attempt to shut it. Similarly, when Nienke "immediately went stiff" in the *Hobbs* case, this helped to show that Hobbs punched Nienke with such force that he knew Nienke would suffer great bodily harm. Likewise, the fact that Officer Crane instantly heard and felt "a very hard pop" in his knee, which caused him to fall to the ground as his knee buckled in pain, helps to show that Parker lunged at the door with such force that he knew Officer Crane would suffer great bodily harm.

9

Consequently, under the facts of this case, Parker's act of lunging against a partially opened door with the entire force of his body while also knowing that Officer Crane was behind that door trying to force it open establishes that Parker knowingly caused great bodily harm to Officer Crane. Parker's argument about not realizing that Officer Crane's knee would buckle ignores that in *Hobbs*, our Supreme Court explained the State needs to prove only that the defendant acted while knowing that any great bodily harm was reasonably certain to result. Parker's actions show that he was reasonably certain great bodily harm would result. Although Parker might not have known that Officer Crane would tear his ACL and meniscus, when viewed in the light most favorable to the State, there was more than enough evidence allowing a rational fact-finder to find that Parker knowingly caused Officer Crane great bodily harm. Thus, there was sufficient evidence to support Parker's conviction of aggravated battery against a LEO.

*Did the Trial Court Err in Instructing the Jury?*

Parker's remaining arguments involve complaints about the jury instructions. First, Parker argues that the trial court erred when it instructed the jury on the definition of "knowingly" as the culpable mental state of aggravated battery against a LEO. Second, Parker argues that the trial court erred when it refused to give the jury instructions on battery against a LEO and simple battery as lesser included offenses of aggravated battery against a LEO. Based upon these alleged errors, Parker asserts that his aggravated battery against a LEO conviction must be reversed.

The State concedes that the trial court erred when it instructed the jury on the definition of "knowingly" as the culpable mental state of aggravated battery against a LEO. Still, it argues that reversal of Parker's conviction is not required because Parker has not established clear error. Concerning Parker's argument regarding the lesser included offense instructions, the State does not contest the legal appropriateness of

10

Parker's request. Instead, it argues that the lesser included offense instructions were not factually appropriate, and even if they were, reversal is not required because any error was harmless.

*Standard of Review*

This court uses the following standard of review when considering jury instruction challenges:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

If, however, the court determines that the party alleging error did not raise their complaints in the form of an objection below, reversal is appropriate only if the instruction was clearly erroneous. K.S.A. 2016 Supp. 22-3414(3). "Instructions are clearly erroneous only if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred." *State v. Tully*, 293 Kan. 176, 196, 262 P.3d 314 (2011). The party alleging error has the burden of establishing that the error was clearly erroneous. *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

*"Knowingly" Definition Instruction Not Clearly Erroneous*

The instruction the trial court gave to the jury defining "knowingly" as a culpable mental state was as follows:  "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about." Because our Supreme Court in *Hobbs* held that "knowingly," as meant in the aggravated battery statute, required the State to prove that the defendant "was aware that his or her conduct was reasonably certain to cause the result," the State concedes that the trial court's instruction was legally inappropriate. See 301 Kan. at 211. Moreover, because Parker admits he did not object to the court's instruction below, he concedes that the clearly erroneous test applies in this appeal. Accordingly, our analysis turns towards the application of the clearly erroneous test.

Parker's arguments rely on the same assertions he made while arguing that there was insufficient evidence. He contends that "[t]here [was] clearly no evidence in the record to support a claim that [he] was reasonably certain [that] his actions would have caused an officer he did not know to be involved in the struggle, to sustain a serious knee injury." Parker concludes that "[h]ad [the jury] been instructed properly, no reasonable juror could have found that [he] was reasonably certain his conduct could have caused the result to Officer Crane or his knee."

The State responds by pointing out that this court has refused to find clear error in another case where the trial court erred in instructing the jury on the definition of "knowingly" as a culpable mental state in accordance with *Hobbs*. Although the factual circumstances were very different, in *State v. Horne*, No. 111,945, 2015 WL 6832956 (Kan. App. 2015) (unpublished opinion), *rev. denied* 305 Kan. 1255 (2016), the *Horne* court determined that because the evidence established that "Horne must have been aware that his conduct was reasonably certain to cause the result," the instruction could not have been clearly erroneous. 2015 WL 6832956, at *3-4.

In comparing *Horne* to this case, we determine that Parker must have been aware that his conduct was reasonably certain to cause great bodily harm. Once again, as explained in the preceding section about sufficiency of the evidence, there was significant evidence supporting Parker's aggravated battery against a LEO conviction. From Parker's trial testimony alone, he admitted that he saw Chief Leslie in her uniform, that he heard her say something about a search warrant, and that he responded by going back inside his house. Moreover, Parker admitted that "[t]hey were trying to keep the door open, [while he] was trying to shut it." Parker's use of the word "they" supports that Parker knew of Officer Crane's presence. In any event, Officer Crane testified that he was in Parker's backyard before Parker retreated into his house, and during the struggle, he told Parker to "stop and open up the door."

Concerning the struggle over the door, Parker admitted he was trying to keep the door shut, and Officer Crane explained that in an effort to keep the door shut Parker would lunge at the door with his body. Lunging at a door with the entire force of one's body in an attempt to keep the other person out, especially when the other person is off balance and surprised by the lunge as Officer Crane was, strongly indicates that the person lunging would be aware that great bodily harm was reasonably certain to result. Moreover, during oral argument, Parker conceded that Officer Crane had suffered great bodily harm.

In summary, there was strong evidence supporting Parker's guilt of aggravated battery against a LEO. Nevertheless, Parker's entire argument why the trial court's "knowingly" as a culpable mental state instruction was clearly erroneous hinges on his belief that the evidence against him was insufficient. Because this was clearly not the case, Parker's argument fails. His insufficiency of the evidence argument has fallen short of the mark—that the jury would have reached a different verdict but for the erroneous instruction. For this reason, we reject this argument.

Parker's last argument concerns his objection to the trial court's failure to give the jury instructions on battery against a LEO and simple battery as lesser included offenses to his aggravated battery against a LEO conviction. It seems Parker argues that the requested instructions were legally appropriate because the elements of battery against a LEO and battery are contained within aggravated battery against a LEO. He then seemingly asserts that the instruction was factually appropriate because of the following: He did not know Officer Crane was behind the door. He did not know that Officer Crane was a properly identified LEO. The jury could have found that he did not injure Officer Crane's knee. Parker concludes that "[t]here is no way to declare this error harmless under the *Ward* analysis."

The State does not contest the legal appropriateness of the requested instructions, stating: "[T]he instruction[s] may be legally appropriate because the instructions for battery on a [LEO] and simple battery are not incompatible with the charge of aggravated battery." The State, however, challenges the factual appropriateness of the requested lesser included offense instructions.

Even so, it is worth explaining that "[a] lesser included offense is a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." *State v. Hunter*, 41 Kan. App. 2d 507, Syl. ¶ 7, 203 P.3d 23 (2009). Here, Parker was charged with aggravated battery against a LEO under a theory that he caused great bodily harm. The elements of aggravated battery against a LEO under that theory require defendants to knowingly cause great bodily harm to a uniformed or properly identified state, county, or city law enforcement officer while the officer is engaged in the performance of the officer's duty. K.S.A. 2016 Supp. 21-5413(d)(1)(A). The elements of battery against a LEO are identical to aggravated battery against a LEO except that the harm inflicted by the defendant need not be great. K.S.A. 2016 Supp. 21-5413(c)(2)(A).

The elements of simple battery are identical to aggravated battery against a LEO except that the harm inflicted by the defendant need not be great and the person the harm is inflicted upon need not be a LEO. K.S.A. 2016 Supp. 22-5413(a)(1). Thus, the preceding lesser included offense instructions were legally appropriate.

Because the requested instructions were legally appropriate, we must consider whether the instructions were factually appropriate. The manner, however, in which Parker has briefed his arguments about both his requested lesser included offense instructions is deficient. Parker does not cite any caselaw to support his argument that the court should have instructed the jury on battery against a LEO or simple battery as lesser included offenses of aggravated battery against a LEO. Indeed, he does not actually attempt to explain what facts support Officer Crane's injury being classified as "bodily harm" under battery against a LEO or simple battery statutes. Instead, he focuses on whether he knew about Officer Crane's presence, whether he knew Officer Crane was in police uniform, and whether he caused Officer Crane's injury. Yet again, the only issue that matters in determining the factual appropriateness of his requested lesser included offense instructions is whether there was evidence presented at his trial allowing a rational fact-finder to find that Officer Crane suffered "bodily harm" as opposed to "great bodily harm."

Although the burden of proof shifts to the State under the harmless error analysis, the burden does not shift to the State until the defendant establishes the instruction was both legally and factually appropriate. See *Fisher*, 304 Kan. at 256-57. In other words, the burden of proof does not shift until the defendant establishes that there was an instructional error. Under the third step of this court's standard for reviewing jury instruction challenges, appellants must provide evidence establishing that the requested instructions were factually appropriate. *Fisher*, 304 Kan. at 256-57. This means that Parker had the burden of analyzing the facts of his case and citing authority in a manner

15

that established a jury could have found Officer Crane suffered only "bodily harm" as opposed to "great bodily harm."

It is a well-known rule of this court that an issue not briefed by an appellant is deemed waived or abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Similarly, points raised incidentally in a brief and not properly analyzed therein as well as points raised without citation to pertinent authority are deemed abandoned. This is because an appellant's failure to expound on his or her argument and cite pertinent authority is akin to failing to adequately brief an issue. *State v. Sprague,* 303 Kan. 418, 425, 362 P.3d 828 (2015); *State v. Murray,* 302 Kan. 478, 486, 353 P.3d 1158 (2015).

Here, by failing to provide pertinent analysis in support of his argument or cite any authority to support his argument, we determine that Parker has abandoned his lesser included offense arguments.

Affirmed.