NOT DESIGNATED FOR PUBLICATION

No. 117,530

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DYLLON ALAN TUCKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed August 17, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM: The law requires a trial court to grant a defendant's request to instruct a jury on lesser crimes when there is sufficient evidence, viewed in the light most favorable to the defendant, that would have supported the instruction. Because the trial court refused to give the two requested jury instructions here, and there is sufficient evidence in the record to support giving the instructions, we reverse Dyllon Alan Tucker's conviction for aggravated battery on a law enforcement officer and remand for a new trial. We affirm all other convictions.

1

*Circumstances can quickly become dangerous.*

The police-citizen encounter here involves four Topeka Police officers—two riding bicycles and two in patrol cars—meeting up with one man asleep in a car with its engine running and music playing so loudly it could be heard several blocks away. Once the driver awakened, the situation deteriorated rapidly and the scene suddenly became dangerous, almost deadly. The police officers' body cameras recorded the encounter.

Two Topeka bicycle patrol officers, Officer Luke Jones and Officer Joe Ralston, were investigating the source of some loud music. They soon discovered its source:  an SUV with its engine running parked on the side of the road. In the driver's seat, the lone occupant—Tucker—was asleep.

The officers turned off the music and the engine. They tried to wake Tucker but could not. Two more officers arrived—Officer Cassandra Caviness and Officer Brian Mooney came in their patrol cars. Upon arriving, Mooney tried to wake up Tucker.

Slowly, Tucker began to return to consciousness. Officer Jones asked Tucker for identification. Tucker said he had no driving license with him, but he gave his name, address, and date of birth to Jones. Officer Jones left the vehicle to check if Tucker was wanted for any crime.

Jones left the driver's side door open and Officer Caviness stepped up to where Jones had been standing. She put one foot on the running board on the outside of the vehicle. She talked with Tucker about why the police were there and asked why he was there. Noting that Tucker's pupils were pinpoints, Caviness asked him when he last smoked methamphetamine. Tucker gave her no understandable answer, so she asked again. This time, Tucker mumbled something and started the vehicle and put it in gear.

Caviness tried to stop him. She reached through the steering wheel with her left hand and tried to turn off the ignition. She could not.

As Tucker began to pull away, Caviness jumped with both feet onto the running board because her arm was stuck in the steering wheel. She was unable to dislodge herself. Tucker swerved to the left and almost hit a parked car. He then straightened out the vehicle and kept driving. Caviness ordered Tucker to stop the vehicle and said that she would shoot him if he did not stop. Just before she pulled her weapon, she felt intense pain in her left wrist and arm. She did manage to pull her weapon and fired at Tucker, but her weapon malfunctioned when she tried to fire a second time. The first shot, however, struck Tucker in his upper arm.

Tucker slowed the car and drove over a curb. The steering wheel turned sufficiently that it allowed Caviness to free her arm. She jumped down and dropped to her knees, trying to find out why her weapon jammed. She appeared to the other officers to be in significant pain. Meanwhile, Tucker continued his flight until he ran into a telephone pole.

Officer Jones, on his bicycle, followed Tucker and Caviness. He heard the shot. He saw Caviness free herself from the SUV and saw Tucker run the vehicle into a telephone pole. As Tucker was reversing from the telephone pole, Jones drew his weapon and yelled "don't, don't do it, don't you fucking. . . ." But Tucker drove away, anyway. Jones tried to follow Tucker's vehicle, but lost sight of him. Jones went on to Tucker's home, instead.

Officer Mooney, in his police car, tried to chase Tucker as soon as he fled, but he had to turn his car around first. Mooney saw Tucker on the grassy area and saw that Officer Caviness was no longer on the vehicle. He activated the car's emergency lights and siren. During his flight, Tucker failed to stop at several stop signs and did not yield to

3

traffic. Tucker finally stopped his vehicle in the driveway in front of his home. When he got out, Mooney ordered him to get on the ground. He did so and Mooney placed Tucker in handcuffs. They took Tucker to a hospital for treatment.

While this was going on, Officer Ralston stayed with Officer Caviness and began to treat her injuries. She was taken to an emergency room, where the doctor diagnosed a fractured wrist. She was placed in a splint to immobilize the fracture, and later the wrist was fully immobilized with a cast for five or six weeks. After the cast was removed, she underwent physical therapy for about a month before she returned to full duty.

*Criminal charges and a jury trial followed the encounter.*

The State charged Tucker with aggravated kidnapping under K.S.A. 2015 Supp. 21-5408(b); aggravated battery on a law enforcement officer under K.S.A. 2015 Supp. 21-5413(d); interference with a law enforcement officer under K.S.A. 2015 Supp. 21-5904(a)(3); and eluding the police under K.S.A. 2015 Supp. 8-1568(b)(1).

The State presented testimony of the officers along with body camera footage from Officers Jones, Caviness, and Mooney.

Because of the contentions made in this appeal, the jury instructions are significant. At the instruction conference, Tucker and the State agreed to the instruction on the elements of aggravated battery, which included the two definitions of "knowingly" that Tucker now complains about.

Tucker also requested two lesser included offense instructions for aggravated battery. He asked for a lesser included offense of battery on a law enforcement officer, arguing that there was evidence of bodily harm and not great bodily harm. He also wanted the lesser offense instruction for *reckless* battery on a law enforcement officer in

4

the alternative to a *knowing* battery on a law enforcement officer. The district court denied both requests. The district court specifically found that there was no evidence of mere bodily harm. Instead, there was only evidence of great bodily harm because of Officer Caviness' fractured wrist. It is not clear in the record why the district court denied the request for a jury instruction on reckless battery on a law enforcement officer.

*Two more subjects were addressed at the instruction conference.*

First, Tucker requested, and was granted, a lesser included offense instruction for criminal restraint for the aggravated kidnapping charge. Second, during this conference, the State explained its choice about how Tucker committed interference with a law enforcement officer. The basis for this charge was Tucker, after he hit the telephone pole, left the scene when Officer Jones yelled at him not to.

The jury found Tucker guilty of criminal restraint, aggravated battery on a law enforcement officer, interference with a law enforcement officer, and eluding the police. The court sentenced Tucker to a controlling 79-month prison sentence for the aggravated battery on a law enforcement officer charge with all other sentences concurrent with the controlling sentence and with each other.

Tucker pursues appellate relief along three avenues. First, he argues the court's jury instruction on aggravated battery of a law enforcement officer was clearly erroneous. Secondly, Tucker maintains the court erred when it refused to give the two lesser-included offense instructions he had requested. Finally, he contends there is insufficient evidence that he knowingly obstructed a police officer when he drove away after the officer had yelled "Don't do it!" We consider his argument on the lesser included instructions first, then we examine his claims about the aggravated battery of a law enforcement officer instruction, and finally we look at the sufficiency of the evidence on the obstruction of a police officer.

*The evidence compels giving the two lesser instructions.*

Tucker requested a lesser included instruction for the offense of battery on a law enforcement officer based on a theory that he only knowingly caused bodily harm, not great bodily harm. He also asked for a lesser included instruction for the crime of reckless battery based on a theory that he acted recklessly and not knowingly. Based on our review of the record and our analysis of the law, we hold that he was entitled to both.

For this analysis we answer four questions:

- Do we have jurisdiction and has the issue been preserved?
- Was the proposed instruction legally appropriate?
- Viewing the evidence in the light most favorable to the defendant or the requesting party, was there sufficient evidence that supported giving the instruction?
- If the district court erred, was the error harmless? See *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Tucker preserved this issue by requesting the lesser included offenses at the instruction conference. See *State v. Roeder*, 300 Kan. 901, 920, 336 P.3d 831 (2014).

The Kansas battery statute, found at K.S.A. 2017 Supp. 21-5413, is neither an example of clarity nor concision. The Legislature has seen fit to pack the crimes of battery, aggravated battery, and aggravated battery against certain persons into one statute. We must unpack that law to see if the trial court here should have given the two requested instructions.

A fair reading of the battery law in effect at the time of Tucker's arrest reveals that aggravated battery can be committed either knowingly or recklessly. The statute begins

6

with battery. Battery was defined as knowingly or recklessly causing bodily harm to another person. K.S.A. 2015 Supp. 21-5413(a)(1). An aggravated battery can be committed in various ways. Subsection (1) of K.S.A. 2015 Supp. 21-5413(b) covers *knowing* aggravated batteries. Then, subsection (2) of K.S.A. 2015 Supp. 21-5413(b) defines *reckless* aggravated batteries.

Moving on, the statute provides that a battery on a law enforcement officer occurs when a battery as defined under subsection (a)(1) is committed against certain people identified in the statute, such as law enforcement officers. See K.S.A. 2015 Supp. 21-5413(c)(2)(A)-(E). Since a battery can be committed either knowingly or recklessly, this means that a battery on a law enforcement officer can be committed either knowingly or recklessly.

But for an *aggravated* battery on a law enforcement officer, the Legislature has only defined crimes where the defendant acts *knowingly.* See K.S.A. 2015 Supp. 21-5413(d). An aggravated battery on a law enforcement officer occurs when an aggravated battery occurs under K.S.A. 2015 Supp. 21-5413(b)(1)(A), (B), or (C). The statute does not define a crime of reckless aggravated battery on a law enforcement officer—meaning, there is no crime of reckless aggravated battery on a law enforcement officer. Thus, if a person recklessly—but not knowingly—caused great bodily harm to a law enforcement officer, that person could either be convicted of battery on a law enforcement officer or an aggravated battery without the increase in punishment because the victim was a law enforcement officer.

But the most important law here is the definition of lesser offenses and lesser included offenses. For an offense to be a lesser included offense it must either be:

- a lesser degree of the same crime that was charged;

7

- a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
- an attempt to commit the crime charged; or
- an attempt to commit a lesser degree of the crime charged or an attempt to commit a lesser offense with all elements identical to some of the elements of the more severe crime. K.S.A. 2015 Supp. 21-5109.

Subsections (3) and (4) of K.S.A. 2015 Supp. 21-5109 dealing with attempted crimes clearly do not apply to this issue.

A defendant is entitled to jury instructions for lesser included offenses when (1) the evidence, viewed in the light most favorable to the defense, would justify a jury verdict in accordance with that theory, and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Simmons*, 282 Kan. 728, 741-42, 148 P.3d 525 (2006).

The remaining question is whether a reckless battery is a lesser degree of the crime of aggravated battery on a law enforcement officer, which requires a knowing mens rea. Battery is clearly a lesser degree of aggravated battery. But the cases analyzing this issue do not analyze the statutes concerning battery on a law enforcement officer. See, e.g., *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012).

Even though there is no crime of reckless aggravated battery on a law enforcement officer, a battery on a law enforcement officer is still a lesser degree of aggravated battery on a law enforcement officer. This is similar to involuntary manslaughter being a lesser included offense of murder. See *State v. Gregory*, 218 Kan. 180, 182-83, 542 P.2d 1051 (1975). Involuntary manslaughter is a lesser included offense of murder because both involve the crime of homicide. 218 Kan. at 182-83. Generally, a reckless battery on a law enforcement officer and a knowing aggravated battery on a law enforcement officer

8

involve the same underlying crime—causing harm to another through violence. Under this theory, a reckless battery on a law enforcement officer is a lesser included offense of aggravated battery on a law enforcement officer because it is a lesser degree of the same crime. Assuming the jury is presented evidence which would support a conclusion that Tucker acted recklessly, the jury should be instructed on a theory of reckless battery on a law enforcement officer. Similarly, the jury should be instructed on a theory of a reckless aggravated battery as a lesser included offense of a knowing aggravated battery on a law enforcement officer, because it is a lesser degree of the same crime. We conclude that the requested instructions were legally appropriate.

We next see if the requested instructions are factually appropriate. K.S.A. 2017 Supp. 22-3414(3) requires the district court to instruct the jury on any lesser included offenses when there is some evidence that would reasonably justify a conviction of the lesser included offense. *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). The duty to instruct on lesser included offenses is triggered by the defense's request for a lesser included offense and must be done even if the evidence for the lesser included offense is weak or inconclusive. *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014).

For the lesser included offense of a knowing battery on a law enforcement officer, the essential question is whether there is evidence of bodily harm or great bodily harm. Ordinarily this is a question for the jury. *Simmons*, 295 Kan. at 177-78. Along this line, a panel of this court has held that twisting a person's arm with enough force to break the arm is not a circumstance where the factual question of whether bodily harm or great bodily harm has occurred should be removed from the province of the jury. See *State v. Vessels*, No. 96,421, 2008 WL 1847374, at *1-3, 7 (Kan. App. 2008) (unpublished opinion).

9

Here, the State presented evidence about the severity of Officer Caviness' fractured wrist. But the doctor testified that it was minimally displaced and required less intervention than other types of fractures. And Officer Caviness testified that she had fully recovered from her injuries and returned to full duty for the Topeka police. This appears to be an example in which the jury should have been given the opportunity to decide whether the injury that resulted from Tucker's actions constituted either great bodily harm or bodily harm.

Taking all of this into account, we hold that the trial court erred by determining that there was only evidence of great bodily harm. The court took the question away from the jury and ruled as a matter of law. This ruling is in error.

This finding, however, does not stop our inquiry. Was this error reversible? In making this determination we look to whether there was a "reasonable probability that the error [affected] the outcome of the trial in light of the entire record." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011). Here, there is a reasonable probability that the jury would have found Tucker guilty of battery of a law enforcement officer had it been instructed on the offense. Great bodily harm is bodily harm that is more than trivial, minor, or moderate harm. *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017).

Here, a reasonable juror could have found Officer Caviness' fractured wrist was minimally displaced and she fully recovered after a few months, and that she suffered only moderate harm and not great bodily harm. See *Vessels*, 2008 WL 1847374, at *5. The reasonable probability that the jury could have found mere bodily harm occurred prevents us from finding that the failure to give the instruction was harmless error.

Because the error is not harmless, Tucker's conviction for aggravated battery on a law enforcement officer must be reversed.

10

But there is another consideration—reckless battery instead of a knowing battery could have been committed here. A reckless battery on a law enforcement officer would be a battery on a law enforcement officer, unaffected by the degree of harm suffered, because there is no specific crime called reckless battery on a law enforcement officer. When the victim of such a crime is a law enforcement officer and suffers great bodily harm but the defendant acted recklessly and not knowingly, the State could only charge reckless aggravated battery.

Tucker argues the court should have given a reckless battery instruction as he requested. For our purposes here, recklessness is consciously disregarding a substantial and unjustifiable risk that circumstances exist or that a result will follow, and this disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. See K.S.A. 2017 Supp. 21-5202(j). The question for this court is whether there is some evidence that a reasonable juror could find that Tucker acted recklessly.

Based on the evidence a reasonable juror could find Tucker's actions were reckless rather than knowing. The act that caused the harm here was Tucker turning the steering wheel with enough force to fracture Officer Caviness' wrist when her arm was inside the steering wheel. When Tucker began to flee from the scene, Officer Caviness got onto the running board of the vehicle because her left arm was stuck in the steering wheel when she tried to turn off the engine. At some point, Tucker moved the wheel and that fractured her wrist. The order of events leading up to Officer Caviness' wrist fracturing is important. First, Officer Caviness ordered Tucker to stop. Next, she removed the hood securing her weapon in the holster, but did not draw her weapon. Next, her wrist fractured. Finally, she drew her weapon and shot Tucker.

The State argues only a jury instruction for knowing aggravated battery on a law enforcement officer was needed because the State produced only evidence that Tucker

11

acted knowingly. The State's evidence that Tucker's actions were knowing is based solely on inference. We are not convinced.

The only evidence on Tucker's mental state at the time of Officer Caviness' injury comes from Detective Daniel Davies' testimony. While in the hospital recuperating from the gunshot wound, Tucker stated that he fled because he was worried about not having a driving license. Officer Caviness' body cam footage shows that Tucker fled after she questioned him about methamphetamine use. Officer Caviness also told Tucker to stop or she would shoot him before her wrist broke. Based on this evidence, a reasonable juror could conclude that Tucker either acted knowingly or recklessly when he turned the steering wheel while making his escape.

One possible conclusion from this evidence is that Tucker was afraid of being punished for the lack of a driving license—or potential methamphetamine use—and consciously disregarded the risk of harm to Officer Caviness in his attempt to flee. Alternatively, a reasonable conclusion is that Tucker was trying to force Officer Caviness off his vehicle by using force to avoid being shot—meaning he knew there was a reasonable certainty that Officer Caviness would be harmed by his actions. The evidence that supports an inference that Tucker acted knowingly does not preclude a conclusion that he acted recklessly. The determination of Tucker's mental state based on the evidence presented is a question of fact that the jury should have been allowed to answer. Thus, we conclude that the court's refusal to give the reckless battery instruction was erroneous.

Next, we turn to whether the error was harmless. The error is not harmless if there is a reasonable probability that it affected the outcome of the trial. The State argues the error is harmless because the evidence was overwhelming on Tucker's mental state. See *Ward*, 292 Kan. at 569. The State cites two unpublished cases for this proposition—*State v. Alvarez*, No. 110,710, 2014 WL 7566066 (Kan. App. 2014) (unpublished opinion), and

*State v. Olivares*, No. 110,313, 2014 WL 6676063 (Kan App. 2014) (unpublished opinion). Neither are persuasive.

In *Alvarez*, the police went to a bar based on a report that there was a suspicious person with a weapon. The defendant was later arrested and had a weapon on his person, which was a criminal violation because of a previous felony conviction. One patron of the bar stated that the defendant had entered the bar holding a gun. The defendant stated that he was at the bar and put on someone else's jacket that had a gun in a pocket. At the very least, the fact that the police found the weapon on the defendant's person showed that he had a culpable general intent to possess the weapon. Even believing the defendant's series of events, he must have left the bar after discovering the weapon and kept the weapon with him until he was arrested. The failure to define a culpable mental state was harmless. See 2014 WL 7566066, at *7. Here, the case is factually different. The evidence is not overwhelming on Tucker's mental state. Instead, a jury would necessarily have to infer his mental state from the facts. An inference of either reckless or knowing is possible from the facts. Because of the necessity that the inference would have to be made on two different possible mental states and evidence supports either conclusion, there is a real probability that the error affected the outcome of the trial, meaning it is not harmless.

Similarly, the panel's decision in *Olivares* is of little use. In *Olivares*, the panel determined whether the failure to include the required culpable mental state in a jury instruction was clear error. 2014 WL 6676063, at * 4-6. The harmlessness inquiry for clear error and error from the denial of a requested instruction is different. Under the clear error test we uphold the conviction unless the defendant firmly convinces this court that had the error not occurred, the outcome of the trial would have been different. *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012). Under the harmlessness test arising from the erroneous denial of a requested instruction, we look to whether there is a real probability that the error affected the outcome of the trial. *Ward*, 292 Kan. at 569.

13

Because of the different standards, *Olivares* provides no support for the State's position. Based on the evidence presented at trial a reasonable juror could have found that Tucker was merely reckless rather than acting knowingly.

A properly instructed jury here would have to make two essential determinations—Tucker's mental state and the degree of harm. Based on the evidence, the jury should have been afforded the opportunity to determine whether Tucker acted knowingly, recklessly, or without a culpable mental state. Additionally, the jury should have been afforded the opportunity to determine the factual question of whether Officer Caviness suffered bodily harm or great bodily harm because of her fractured wrist.

Based on the conflicting evidence on the severity of Officer Caviness' fractured wrist and the need for inferences on Tucker's mental state, there is a real possibility that the jury could have reached a different result had it been instructed on the lesser included offenses. This is another reason why we must reverse Tucker's conviction for aggravated battery and remand for a new trial.

*The error in the jury instruction is not clearly erroneous.*

In this issue, Tucker focuses on the definition of "knowingly" that is set out in the instruction. He contends that it does not comply with our Supreme Court's holding in *State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179 (2015). Since Tucker did not object to this instruction at trial, we must review for clear error. K.S.A. 2017 Supp. 22-3414(3); see *State v. Adams*, 294 Kan. 171, 183, 273 P.3d 718 (2012).

This is a two-part inquiry. First, we check to see whether there is any error in the given instruction. Obviously, this is a question of law subject to unlimited review. In the second step, we look to see whether the error requires reversal. An error requires reversal if this court is convinced that the jury would have reached a different verdict had the error

14

not occurred. For this analysis, we review the entire record and use an unlimited standard of review. But the defendant bears the burden of showing the error is reversible. *Williams*, 295 Kan. at 515-16.

The jury instruction here used two definitions of knowingly:

- "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about; *or*
- that his conduct was reasonably certain to cause the result complained about by the State." (Emphasis added.)

Tucker validly argues that under *Hobbs*, an aggravated battery does not occur when the defendant is merely "aware of the nature of his conduct that the State complains about"; thus, the inclusion of this language is erroneous.

The Supreme Court in *Hobbs* ruled that for crimes of aggravated battery the Legislature intended to define "knowingly" as "the accused acted when he or she was aware that his or her conduct *was reasonably certain to cause the result*." (Emphasis added.) 301 Kan. at 211. Thus, under *Hobbs*, a person being "aware of the nature of his conduct that the State complains about" cannot support a conviction for aggravated battery because it *does not* include knowledge that the act could result in great bodily harm. A panel of this court has recently followed the *Hobbs* ruling in *State v. Kline*, No. 109,900, 2016 WL 97844, at *1-2 (Kan. App. 2016) (unpublished opinion).

But the jury instruction used here differed from the instruction in *Kline.* For reasons that are unclear in the record, the court here used both definitions. This is not a practice that we approve. The two different definitions here were separated by the disjunctive "or." By giving both, the court allowed the jury to rely solely on the "aware of the nature of his conduct" part of the definition to find Tucker guilty of aggravated

15

battery on a law enforcement officer. The inclusion of this language in the instruction would allow a conviction based on a lower mental state, meaning that the defendant was "aware of the nature of his conduct." This inclusion means the instruction given here violates the ruling in *Hobbs*. Again, in prosecutions for aggravated battery, the State must produce evidence, and the jury must find, that the defendant acted with reasonable certainty that great bodily harm or disfigurement could result from the action. See 301 Kan. at 210-11.

But does this error call for reversal of the conviction? We will reverse a conviction only if we are firmly convinced that the jury would have reached a different verdict had the correct instruction been given. The defendant bears the burden to prove reversibility. *Williams*, 295 Kan. at 516. In making this determination, it is not whether the jury *could* have reached a different result. Instead, we must decide, based on the whole record, if Tucker has firmly convinced us whether the jury *would* have reached a different result.

Tucker fails to convince us. He provides no evidence that the jury would have reached a different result. If we use the correct standard, the question for the jury was whether Tucker knowingly turned the steering wheel in a way reasonably certain to cause great bodily harm to Officer Caviness, whose arm was trapped in the steering wheel. While it is certainly possible that the jury may not have found that Tucker acted with reasonable certainty of the possibility of great bodily harm, Tucker presents no argument to us, based on the record, that supports a finding that the jury *would* have reached a different result had it been instructed on the proper standard. Considering this lack of argument, Tucker has failed to satisfy his burden of showing reversibility under the clear error standard. We find no clearly erroneous error calling for reversal.

*There is sufficient evidence that Tucker obstructed the officer.*

In Tucker's final issue, he claims there is insufficient evidence to convict him of interference with a law enforcement officer. In his view, there was no evidence that he heard or observed any commands from Officer Jones that would show he was under arrest. Thus, there was no evidence that he knowingly obstructed Officer Jones.

In cases such as this, we review the evidence in the light most favorable to the State. We uphold the conviction if we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on the evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). When determining whether there is sufficient evidence to support a conviction we do not reweigh the evidence or reassess credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

For the crime of interference with a law enforcement officer, the State must prove four elements.

1) There was an identified law enforcement officer carrying out some official duty.
2) The defendant knowingly or willfully obstructed or opposed the officer.
3) The defendant knew or should have known the person he opposed was a law enforcement officer.
4) The obstruction or opposition substantially hindered or increased the burden of the officer in carrying out his official duty. *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017).

Officer Jones was an identified law enforcement officer engaged in an investigation when Tucker fled. Tucker had talked to Jones and knew or should have known he was a law enforcement officer. Tucker fleeing after hitting the pole

17

substantially hindered Officer Jones because he could not effectuate an arrest after Tucker began to flee from the scene. The only question that remains is whether Tucker knowingly or willfully obstructed or opposed Officer Jones.

Tucker's main argument is that the State proved no obstruction was knowing. Knowing has two meanings. When talking about a person's conduct or circumstances surrounding that person's conduct, a person acts knowingly "when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2017 Supp. 21-5202(i). When considering the results of a person's conduct, a person acts knowingly when they are "aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2017 Supp. 21-5202(i). Whether an act is done knowingly can be inferred from the evidence and Tucker ignores this. See, e.g., *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016).

Tucker had begun to flee from a police investigation. A police officer was on his running board when he began to flee. The officer shot him in the arm after telling him to stop or she would shoot. After being shot, the officer was no longer on the vehicle, and Tucker drove into a telephone pole. As Tucker was beginning to drive away from the telephone pole, Officer Jones yelled "don't, don't do it, don't you fucking . . ." and stopped yelling as Tucker left the scene. Officer Jones' yelling was audible on Officer Caviness' body camera footage. The windows of the vehicle were down, and the loud music had been turned off. A rational juror could infer that Tucker heard Officer Jones' command not to do it. A rational juror could infer that "do it" referred to driving away from the location. Based on these reasonable inferences a rational juror could conclude that Tucker was aware of his conduct and he acted with reasonable certainty that his conduct would obstruct or oppose Officer Jones.

When we view this evidence in the light most favorable to the State, we hold a reasonable juror could find all elements of interference with a law enforcement officer

18

were present based on Tucker leaving the scene after Officer Jones yelled for him not to leave. There is sufficient evidence in the record to convict Tucker of interference with a law enforcement officer.

We affirm Tucker's convictions for criminal restraint, interference with a law enforcement officer, and eluding police. We reverse his conviction for aggravated battery on a law enforcement officer and remand for a new trial on this charge.